UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

APR 1 0 2009

Clerk, U.S. District and
Bankruptcy Courts

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 08-0376 (PLF) |
| | ) |
| GREGORY LASSITER, | ) |
| RYAN WHEELER, | ) |
| DEVRO HEBRON, | ) |
| DEVON HEBRON, | ) |
| DAVID COOPER, and | ) |
| DARRIN MCCAULEY, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

        This matter is before the Court on the government's Motion for Court Ordered

Major Case Prints and DNA Samples ("Mot."). By this motion, the government sought to

compel the defendants to submit to the taking of major case prints and buccal cell cheek swabs

from all six defendants in this action. Only defendant Devro Hebron opposed the motion.[1] The

Court previously granted the motion as unopposed with respect to Mr. Hebron's five co-

defendants, and also ordered defendant Devro Hebron to provide major case prints while it

considered his Fourth Amendment challenge to the taking of a DNA sample. See Orders of

March 13, 2009 [Docket Nos. 40 and 41]. After carefully considering the government's original

motion as well as defendant Hebron's opposition ("Opp."), the Court will grant the government's

_____

        [1]    There are two defendants named Hebron in this case, Devro Hebron and Devon
Hebron. References throughout this opinion to "defendant Hebron" or "Mr. Hebron" refer to
Devro Hebron.

1

motion with respect to the collection of DNA from Mr. Hebron.

The defendants are charged in a nine-count indictment with numerous violent offenses, including kidnapping, assault with intent to commit robbery while armed, and assault with intent to kill Gregory Lyles. The government charges that the defendants lured Mr. Lyles to defendant Darrin McCauley's house and assaulted him there, leaving him bloodied and dazed. They took his jewelry, wallet and car keys, duct taped his hands behind his back, and placed a helmet and shirt over him to hide his injuries and the blood on his clothing. See Mot. at 2. The defendants then drove Mr. Lyles in his truck from Maryland into the District of Columbia, pointed a gun at him and ultimately stabbed him with a boxcutter, allegedly purchased by Mr. Hebron, and left him in the back of his truck, bleeding profusely. Id. at 2-5. The government seeks to take buccal cell cheek swabs from Mr. Hebron in order to compare his DNA to DNA material discovered at the crime scene. Specifically, in Mr. Hebron's case, they wish to compare his DNA with swabs taken from a bloodstained white tube sock recovered from defendant Darrin McCauley's house near the spot where Mr. Lyles was assaulted.[2]

## DISCUSSION

Compelling an accused to give a DNA sample is a search within the meaning of the Fourth Amendment. See Johnson v. Quander, 440 F.3d 489, 493 (D.C. Cir. 2006) ("There is no question that the compulsory extraction of blood for DNA profiling constitutes a 'search' within the meaning of the Fourth Amendment.") (citing Skinner v. Ry. Labor Executives' Ass'n,

---

[2]     The governments concedes that there is no probable cause to believe that the swabs taken from the victim's truck or the shoes turned over to the government that allegedly belong to defendant Lassiter have anything to do with defendant Devro Hebron. See Mot. at 8-9.

489 U.S. 602, 616 (1989)); see also Schmerber v. California, 384 U.S. 757, 767 (1966) (finding

that the compulsory drawing of blood was a search and seizure under the Fourth Amendment);

Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. at 617 (taking urine sample implicates Fourth

Amendment, even though taking urine sample is less invasive of the body than drawing blood;

analysis of a urine sample, like that of blood, "can reveal a host of private medical facts," and the

actual act of taking the sample implicates privacy interests).

   The government in this case proposes to take the DNA sample with a buccal cell

cheek swab, which requires scraping the inside of the subject's cheek, rather than by drawing

blood as in Schmerber and Johnson.  The Court does not find this difference significant,

however; both methods involve a bodily intrusion where an individual has an "expectation[] of

privacy." See Winston v. Lee, 470 U.S. 753, 758 (1985).  As the courts have recognized, an

individual's DNA reveals extensive private medical information, and the act of reaching into the

subject's mouth to conduct the swab, although not a surgical invasion, is still an invasion into the

body. See Padgett v. Donald, 401 F.3d 1273, 1277 (11th Cir. 2005) (swabbing inmates' cheeks

for saliva to create a DNA database is a search within the meaning of the Fourth Amendment);

Schlicher v. Peters, 103 F.3d 940, 942-43 (10th Cir. 1996) (taking a saliva sample for DNA

information is a search within the meaning of the Fourth Amendment).

   The question before the Court, then, is whether the proposed search of Mr.

Hebron is "reasonable" under the Fourth Amendment.  As the Supreme Court stated in

Schmerber, in addition to the existence of probable cause under the Fourth Amendment, the

procedures employed in taking blood must be reasonable.  See Schmerber v. California, 384 U.S.

at 768, 769-70.  As the Supreme Court later noted, in addition to the requirement of probable

3

cause, "Schmerber's inquiry considered a number of other factors in determining the 'reasonableness' of the [intrusion]." Winston v. Lee, 470 U.S. at 761. These factors include (1) "the extent to which the procedure may threaten the safety or health of the individual," and (2) "the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity." Id. "Weighed against these individual interests is the community's interest in fairly and accurately determining guilt or innocence." Id. at 762.

In opposing the compelled extraction of his DNA, Mr. Hebron argues that under Schmerber and Winston, compelling the submission of Mr. Hebron's DNA is unreasonable. He argues that taking the sample is highly intrusive and that there is little likelihood that collecting Mr. Hebron's DNA will have any impact on proving his guilt or innocence. Opp. at 4-5.

### A. Probable Cause

Probable cause to conduct a search or seizure of a person, like the DNA submission the government seeks to compel in this case, must be "particularized with respect to the person to be searched or seized." Barham v. Ramsey, 434 F.3d 565, 573 (D.C. Cir. 2006) (quoting Maryland v. Pringle, 540 U.S. 366, 370-71 (2003)). The government may not show probable cause to search Mr. Hebron merely by establishing probable cause to search his co-defendants. See id. The Court agrees with Mr. Hebron — and, as noted, the government effectively concedes — that the government has not shown any connection between defendant Hebron and the victim's truck, or between defendant Hebron and the shoes that allegedly belong to co-defendant Gregory Lassiter. See Mot. at 8. The only question before the Court is whether the government has shown probable cause to believe that Mr. Hebron's DNA may match that

4

found in the white tube sock recovered from Mr McCauley's townhouse.

While "probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules . . . the substance of all the definitions of probable cause is a reasonable ground for belief of guilt," or, in this case, a reasonable ground for belief that Mr. Hebron's DNA may match that recovered from the white tube sock. Maryland v. Pringle, 540 U.S. at 370-71 (internal citation and quotations omitted).  Defendant Hebron argues that the government cannot connect the sock to him because (1) the sock was not recovered from his residence, (2) there is no evidence that Mr. Hebron owned the sock, and (3) there is no evidence that he was one of the individuals who assaulted Mr. Lyles near the location where the sock was discovered.  See Opp. at 5.

Although it is uncertain who owns the sock, Mr. Lyles saw Mr. Hebron in Mr. McCauley's townhouse at the time of the assault in the room where the assault took place, and he has stated that Mr. Hebron participated in the assault at least to the extent that he held a gun and made threatening statements.  See Mot. at 2.  During the course of the assault, Mr. Lyles became "dazed," and bloodied.  Id. In that condition, it seems unlikely to the Court that Mr. Lyles would be able to identify precisely where each of the defendants, including Mr. Hebron, were while he was being assaulted.  There is probable cause to believe, however, that Mr. Hebron was in the room where and when the assault took place.  In addition, a blood stain was discovered on the sock located near the couch where Mr. Lyles was assaulted.  See Mot. at 8-9.  Its proximity to the location of the assault makes it probable that one of the individuals involved in the assault may have been wearing the sock and that one or more of them had some contact with the sock.  The

5

Court finds that there is sufficient probable cause to believe that Mr. Hebron's DNA may match that recovered from the sock.

### B. The _Schmerber_ Balancing Test

Once probable cause has been established, <u>Schmerber</u> and <u>Winston</u> require balancing "the extent to which the procedure may threaten the safety or health of the individual," and "the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity," against "the community's interest in fairly and accurately determining guilt or innocence." <u>Winston v. Lee</u>, 470 U.S. at 761-62 (citing <u>Schmerber v. California</u>, 384 U.S. at 770-71). The Court will consider the factors in turn.

As to the first factor, the government seeks to obtain the defendant's DNA by taking a buccal cell swab from the defendant. This procedure involves rubbing a cotton swab along the inside of the defendant's cheek. For good reason, defendant Hebron does not argue that this procedure poses any threat to his health or safety. Indeed, this procedure is considerably less invasive and poses less of a threat to the health and safety of the defendant than taking blood — the type of search that was permitted in <u>Schmerber</u>. <u>See</u> <u>Johnson v. Quander</u>, 440 F.3d at 496-97. The Court finds that this factor weighs in favor of the government and its request for the DNA sample.

As to the second factor, defendant argues that DNA contains "a plethora of very personal and sensitive information," and thus the test should be considered "highly intrusive." Opp. at 4. While there may be potential for misuse of stored DNA information, the purpose of taking Mr. Hebron's DNA in this case is only to compare his identity with DNA recovered at the

6

crime scene for purposes of the trial in this criminal case.  As Judge Walton has noted, when

DNA is sought for a limited purpose, a court may wait to consider challenges to other potential

use or misuse of an individual's DNA until those uses have actually occurred.  See Johnson v.

Quander, 370 F. Supp. 2d 79, 88 n. 6 (D.D.C. 2005) aff'd 440 F.3d 489.  The government has not

sought to use the DNA for any purpose other than for identification of defendant Hebron as one

of the perpetrators of the offenses with which he is charged.  Hypothetical privacy intrusions will

not render the use of DNA for these purposes unreasonable.  See id.  This factor therefore also

weighs in the government's favor.

   Finally, the Court must weigh the first two factors against the community's

interest in fairly and accurately determining guilt or innocence.  Winston v. Lee, 470 U.S. at 762.

Given the violent nature of the alleged acts in this case, the community's interest in accurately

determining guilt or innocence is particularly strong.  Cf. United States v. Weston, 134 F. Supp.

2d 115, 132 (D.D.C. 2001).  While the defendant argues that "the requested DNA sample is of

little, if any, significance" to the ultimate resolution of this case, Opp. at 5, he cannot know this.

If the DNA recovered from the crime scene does in fact match Mr. Hebron's DNA, that evidence

would be probative of the government's assertion that Mr. Hebron was at the crime scene and

participated in the assault of Mr. Lyles.  Defendant also argues the government has failed to show

a need for the sample because its evidence already includes the eyewitness testimony of the

victim as well as the statements of various of the co-defendants.  See id.  Although the DNA

evidence might be duplicative or corroborative of testimony given by the victim and others and

their identification of Mr. Hebron as a participant in the charged crimes, DNA evidence is

evidence of a different form and nature than eyewitness identification testimony and is not

susceptible to the same type of reliability challenges.  Under the circumstances presented, the Court concludes that the third factor also weighs in favor of the government.

Balancing Mr. Hebron's privacy interests against the public's interest in determining guilt or innocence, the Court finds that it is reasonable under the Fourth Amendment to compel Mr. Hebron to submit to a buccal cell swab for the purposes of conducting DNA analysis.  The government's motion will be granted.  Accordingly, it is hereby

ORDERED that the Government's motion for Court Ordered Major Case Prints and DNA Samples [32] is GRANTED as to defendant Devro Hebron.  Devro Hebron shall submit to the taking of a DNA sample by buccal cell cheek swab.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 4/10/09